Filed 1/25/24  In re U.S. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re U.S., a Person Coming Under the Juvenile Court Law. | B322175 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>     v.<br><br>M.N.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. 22CCJP00126B) |

APPEAL from orders of the Superior Court of Los Angeles County.  Jean M. Nelson, Judge.  Affirmed.

Vincent W. Davis, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyne R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica Buckelew, Deputy County Counsel, for Plaintiff and Respondent.

_____

Appellant M.N., former caregiver, appeals from the juvenile court orders denying her Welfare and Institutions Code[1] section 388 petition and request for de facto parent status for baby U.S. We conclude the juvenile court did not abuse its discretion in denying M.N.'s section 388 petition because returning U.S. to M.N.'s care would not be in U.S.'s best interest.  We further conclude that the juvenile court did not abuse its discretion in denying M.N. de facto parent status for the same reasons it denied her section 388 petition.  Accordingly, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Baby U.S. came to the attention of the Los Angeles County Department of Children and Family Services (DCFS) when she was born in November 2021.  The juvenile court declared U.S. a dependent of the court under section 300 and removed U.S. from Mother's care.

Following U.S.'s discharge from the hospital, the juvenile court temporarily placed U.S. with M.N., a Non-Relative Extended Family Member (NREFM).  M.N. lived in the same building as U.S.'s Mother.  M.N. then applied for Los Angeles County Resource Family Approval (RFA) to have her home approved for U.S.'s placement.

On February 18, 2022, DCFS learned that M.N. did not bring U.S. to a February 17, 2022 medical exam.  M.N. did not bring U.S. to the first-scheduled appointment on December 9, 2021.  M.N also did not bring U.S. to three Los Angeles County Medical Hub clinic appointments.

The RFA division informed DCFS that it had concerns about M.N.'s initial home assessment.  The RFA division observed

___

[1]     All further statutory references are to the Welfare and Institutions Code.

the home to be cluttered, with furniture blocking windows and emergency exits.

On March 8, 2022, the RFA division informed DCFS that M.N. and the adults living with her, M.N.'s mother and adult daughter, had not submitted to livescan fingerprinting despite U.S. residing with them for 61 days. DCFS stated that although M.N. reported "that a final walkthrough was completed, to our knowledge, the home had not yet been approved [or] denied."

On March 10, 2022, the Regional Center intake coordinator notified DCFS that she attempted to contact M.N. and Mother by voicemail and letter. DCFS then asked M.N. to call back because otherwise the Regional Center would send an inactivation letter. On March 15, 2022, the Regional Center informed DCFS that it closed the referral for U.S. because they received no response from Mother and M.N. M.N. reported to DCFS that she had contacted the Regional Center and they told her she did not qualify for services. DCFS contacted the Regional Center to clarify if they had spoken to M.N. The Regional Center told DCFS that they "had not spoken to [M.N.] and that it was concerning that the caregiver would say that she did."

On April 15, 2022, the juvenile court ordered DCFS to conduct three unannounced home visits and to require M.N. to take at least three random drugs tests. On April 20, 2022, M.N. refused to test. On April 21, 2022, M.N. tested positive for amphetamine, methamphetamine, and marijuana. On April 26, 2022, M.N. did not appear for her third test. After receiving her April 21, 2022 lab results, DCFS removed U.S. from M.N.'s custody and placed her with a new caregiver.

On May 5, 2022, M.N. requested to be withdrawn from the RFA approval process. The RFA division provided M.N. with

"a withdrawal letter with details on how to re-apply for RFA, should she desire or the need arise."

On May 16, 2022, M.N. reported that Mother sent M.N. a video of one of Mother's visits with U.S. M.N. told DCFS that Mother "was high" in the video.

The new caregiver reported to DCFS that Mother called M.N. during her visits with U.S. The new caregiver reported that on May 23, 2022, Mother video called M.N. for forty minutes during one of her visits with U.S. On the video call, M.N. repeatedly told U.S. "that she is coming home." The new caregiver also reported that Mother and M.N. talked about the DCFS social worker during the call.

On May 10, 2022, M.N. filed a section 388 petition to have U.S. returned to her care. M.N. contended that she took care of U.S. since birth, and that she had the "means, ability and capacity to provide [U.S.] with a sa[f]e, healthy and loving home, just as we have done so for [her] siblings." She also contended that she would be willing to facilitate reunification efforts for U.S. and her parents. Further, M.N. stated she would adopt U.S. if the parents did not reunify. On the same day, M.N. also filed a petition for de facto parent status.

On May 27, 2022, the juvenile court held a hearing on M.N.'s section 388 petition and request for de facto parent status. The juvenile court admitted M.N.'s section 388 petition into evidence. The court also admitted the jurisdiction and detention reports. The court further admitted DCFS's Last Minute Information filed that day. In the Last Minute Information, DCFS stated that M.N. was not an appropriate caregiver. "At the tender age of the child, [DCFS] needs for the child's caregiver to be consistent and reliable." The Last Minute Information detailed

4

M.N.'s toxicology results, her difficulties with other service providers, and her involvement with Mother.

The juvenile court stated that its tentative ruling was that M.N. failed to make a prima facie showing on her section 388 petition. The juvenile court primarily based its ruling on M.N. testing positive for methamphetamine and initially refusing to test. The court further observed that M.N. also missed the next test and then continued to test positive for marijuana.

While the juvenile court did not allow M.N. to testify, it allowed counsel to present argument. However, counsel argued facts that were not included in the petition. M.N.'s counsel argued that M.N. believed that the marijuana she smoked may have been laced with methamphetamine. Counsel also stated that M.N. drug tested twice for her older child's dependency case and that "there were no issues coming from those test results." In contrast, the petition made no mention of M.N.'s drug use or drug tests. Moreover, the petition contained no information about M.N.'s own child being subjected to dependency proceedings, such as whether M.N.'s child was removed from her care, what the basis was for the removal, or that M.N.'s case plan for her own child required her to drug test.

The juvenile court stated that its tentative ruling remained. The court explained that it did not find credible that M.N. did not know the marijuana was laced with methamphetamine. The court also noted that M.N. had a long history of not being responsive and cooperative with DCFS. The court stated, "and I don't even think regular use of marijuana is really appropriate here with such a young child and she won't be protective because she is too close to the mother. It is not in the best interest of the child, so the 388 is denied." The court then ruled that it was

denying the petition for de facto parent status for the same reasons that it denied the section 388 petition.

M.N. timely appealed.

## DISCUSSION

### I. The juvenile court did not abuse its discretion in denying the section 388 petition

DCFS argues that M.N. lacks standing to appeal the denial of her section 388 petition because she is a NREFM. DCFS claims under the language of section 388, even though any interested party may file a section 388 petition, that does not necessarily entitle the party to appeal the decision. We assume, without deciding, that M.N. has standing to appeal the denial of the section 388 petition. Even considering the merits, we conclude that the juvenile court did not abuse its discretion in finding M.N. failed to make a prima facie showing that returning U.S. to her care would be in U.S.'s best interest.

A party may petition the court under section 388 to change, modify or set aside a previous court order. The petitioning party has the burden of showing, by a preponderance of the evidence, that (1) there is a change of circumstances or new evidence, and (2) the proposed change is in the child's best interests. (§ 388; *In re Jasmon O.* (1994) 8 Cal.4th 398, 415, 33.)

"The parent need only make a prima facie showing to trigger the right to proceed by way of a full hearing." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309–310.) " '[I]f the petition presents any evidence that a hearing would promote the best interests of the child, the court will order the hearing.' " (*In re Jasmon O., supra,* 8 Cal.4th at p. 415.) "However, if the liberally construed allegations of the petition do not make a prima facie showing of changed circumstances and that the proposed change would promote the best interests of the child, the court need not

6

order a hearing on the petition. [Citations.] The prima facie requirement is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition." (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.) In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case. (*In re Justice P.* (2004) 123 Cal.App.4th 181, 188–189.)

"The conditional language of section 388 makes clear that the hearing is only to be held if it appears that the best interests of the child may be promoted by the proposed change of order, which necessarily contemplates that a court need not order a hearing if this element is absent from the showing made by the petition." (*In re Zachary G., supra,* 77 Cal.App.4th at pp. 806–807.)

Conclusory allegations are insufficient to make a prima facie showing. "If a petitioner could get by with general, conclusory allegations, there would be no need for an initial determination by the juvenile court about whether an evidentiary hearing was warranted. In such circumstances, the decision to grant a hearing on a section 388 petition would be nothing more than a pointless formality." (*In re Edward H.* (1996) 43 Cal.App.4th 584, 593.)

On appeal, M.N. argues that the juvenile court erred in denying an evidentiary hearing because "she repeatedly requested that the minor be placed with her." Without citing to the record, M.N. further argues that "her children had been returned to her care." M.N.'s repeated requests that U.S. be placed with her is not evidence of changed circumstances or that placement with M.N. would be in the best interest of U.S. (See *In re Edward H.,*

7

*supra,* 43 Cal.App.4th at p. 593.)  Further, the petition did not contain any allegations regarding M.N.'s children being subjected to dependency proceedings.  M.N. provided no context regarding her children's dependency cases, such as the age of the children, date of removal, and when they were returned to M.N.'s care. M.N. thus fails to demonstrate on appeal a change in circumstances that would promote the best interests of U.S.  (See *In re Zachary G., supra,* 77 Cal.Ap.4th at p. 808.)

Moreover, the juvenile court did not err in concluding there was no prima facie showing that returning seven-month-old U.S. to M.N.'s care was in the child's best interests, because M.N. refused to test prior to testing positive for methamphetamine while U.S. was in her care, and then missed her third test.  M.N. tested positive for methamphetamine on April 21, 2022, and filed her petition on May 10, 2022, less than a month after her positive drug test.  M.N.'s petition did not contain any claims about her drug use.  Her counsel argued for the first time at the hearing that M.N.'s marijuana was laced with methamphetamine.  M.N. does not argue on appeal that counsel's argument on this point should be a basis for reversing the juvenile court's prima facie finding.  Further, the record established that M.N. was enmeshed with Mother.  Mother called M.N. during visits with U.S., and M.N. told U.S. that "she was coming home."  Mother and M.N. also lived next to each other in the same apartment building. While the court did not specify that U.S.'s missed medical appointments were also a basis for its ruling, it noted that M.N. had a long history of not being responsive or cooperative with DCFS.  As such, there was no abuse of discretion when the court concluded that M.N. was not reliable enough to care for a seven-month-old infant.  Moreover, the petition was conclusory because

it merely asserted that returning U.S. to M.N.'s care would be in her best interest, and did not state a basis for any change in circumstances. (See *In re Edward H., supra,* 43 Cal.App.4th at p. 593.) Thus, the juvenile court did not abuse its discretion in ruling that the section 388 petition failed to make a prima facie showing that returning U.S. to M.N's care would be in U.S.'s best interest. (See *In re Zachary G., supra,* 77 Cal.Ap.4th at p. 808.) Accordingly, the juvenile court was not required to conduct a full evidentiary hearing on M.N.'s section 388 petition. (*Ibid*.)

## II. The juvenile court did not abuse its discretion in denying de facto parent status to M.N.

M.N. asks that we reverse the juvenile court's ruling denying her de facto parent status. Again, we find no abuse of discretion.

"The concept of de facto parent has been judicially created to recognize limited rights in dependency cases for a person who has been found by the juvenile court to have assumed, on a day-to-day basis, the role of a parent, fulfilling the child's physical and psychological needs." (*In re Leticia S.* (2001) 92 Cal.App.4th 378, 381.) A de facto parent is not entitled "to reunification services, visitation, custody, [or] continued placement of the child." (*In re A.F.* (2014) 227 Cal.App.4th 692, 700.) Rather, de facto parent status "merely provides a way for the de facto parent to stay involved in the dependency process and provide information to the court." (*In re Bryan D.* (2011) 199 Cal.App.4th 127, 146.)

"The factors courts generally consider for determining de facto parent status include 'whether (1) the child is "psychologically bonded" to the adult; (2) the adult has assumed the role of a parent on a day-to-day basis for a substantial period of time; (3) the adult possesses information about the child unique

9

from other participants in the process; (4) the adult has regularly attended juvenile court hearings; and (5) a future proceeding may result in an order permanently foreclosing any future contact [between the adult and the child.]' " (*In re Bryan D., supra*, 199 Cal.App.4th at p. 141.) "De facto parent status is ordinarily liberally granted on the theory that a court only benefits from having all relevant information on the best interests of the child. However, the determination depends on the specific circumstances of each case." (*Ibid*.)

"A person requesting de facto parent status has the burden to show by a preponderance of the evidence he or she qualifies for that status." (*In re Abigail L.* (2022) 75 Cal.App.5th 169, 178.) "We review a juvenile court's decision denying a request for de facto parent status for an abuse of discretion." (*Ibid*.) " ' "In most cases, the lower court does not abuse its discretion if substantial evidence supports its determination to grant or deny de facto parent status." ' " (*In re Bryan D., supra*, 199 Cal.App.4th at p. 141.)

However, even where an individual may meet the requirements for de facto parent status, courts have found that in order "to qualify as a de facto parent, one must demonstrate that he or she cares about the child's well-being, desires to fulfill the child's needs, and intends to act in the child's best interests." (*In re Jody R.* (1990) 218 Cal.App.3d 1615, 1627.) An adult may become ineligible for de facto parent status if they have "act[ed] in a manner that is fundamentally inconsistent with the role of a parent" by acting in an unsuitable manner. (*In re Bryan D., supra*, 199 Cal.App.4th at p. 142.)

*In re Merrick V.* (2004) 122 Cal.App.4th 235 is instructive. Although the grandmother in that case assumed daily care and

was psychologically bonded with two-year-old twins, she left them in the care of their mother, "whom she knew used drugs and had an unstable lifestyle." (*Id*. at p. 257.) As such, our colleagues in the Fourth District concluded that the juvenile court did not abuse its discretion in denying de facto parent status to the grandmother. (*Ibid*.)

Further, in *In re Jacob E*. (2004) 121 Cal.App.4th 909, a grandmother failed to take her grandson to routine medical and dental appointments, failed to enroll him in school, and misrepresented to the court, DCFS, and her grandson's lawyer that she had done so. (*Id*. at p. 923.) After her grandson was removed from her care, her grandson revealed she would hit him with a stick and that he had been exposed to domestic violence. (*Id*. at p. 920.) Our colleagues in Division Three of this district held that even though the grandmother cared for her grandson for five years, during the latter part of that period she was no longer cooperating with DCFS, and her recent care of her grandson was "inadequate and fundamentally at odds with the role of a parent." (*Id*. at pp 920–921.)

Here, even assuming that M.N. otherwise qualifies for de facto parent status, there is substantial evidence to support that M.N. "abandoned the parental role." (*In re Bryan D. supra*, 199 Cal.App.4th at p. 146.) The juvenile court stated that it denied M.N.'s petition for de facto parent status for the same reasons it denied her section 388 petition. Like *In re Merrick V.*, *supra*, 122 Cal.App.4th, the record shows that M.N. was enmeshed with Mother, who was the reason for U.S.'s initial removal. The risk of harm to U.S. is higher given that there is evidence to support that M.N., who was supposed to be U.S.'s caretaker, was using drugs. U.S. was only five months old at the

11

time DCFS removed her from M.N.'s care. This division has observed that infants or toddlers are at higher risk for substantial harm. (See *In re Bryan D.*, at p. 144.) Thus, U.S. was particularly vulnerable at a tender age.

Similar to *In re Jacob E.*, there is evidence to support that M.N. was unreliable and failed to take U.S. to medical appointments. M.N. also failed to follow up with service providers and complete her home approval process. M.N. further made misrepresentations to DCFS regarding her contact with service providers. Finally, M.N. defied court orders by initially refusing to drug test then testing positive for methamphetamine. M.N. then did not attend her third random drug test. As such, there was substantial evidence to support that M.N.'s conduct during the period she cared for U.S. "was inadequate and fundamentally at odds with the role of a parent." (*In re Jacob E., supra,* 121 Cal.App.4th at p. 921.)

Accordingly, the juvenile court did not abuse its discretion in denying M.N. de facto parent status.

## DISPOSITION

The juvenile court orders are affirmed.

VIRAMONTES, J.

WE CONCUR:

GRIMES, Acting P. J.

WILEY, J.

12